**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COOLTVNETWORK.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-292-LPS-JLH |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| COOLTVNETWORK.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-293-LPS-JLH |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES, | ) | |
| CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| COOLTVNETWORK.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-295-LPS-JLH |
| | ) | |
| LIMELIGHT NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| COOLTVNETWORK.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-296-LPS-JLH |
| | ) | |
| MICROSOFT CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

| | |
|---|---|
| COOLTVNETWORK.COM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-297-LPS-JLH |
| | ) |
| OOYALA, INC., | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |
| COOLTVNETWORK.COM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-534-LPS-JLH |
| | ) |
| SNAP INC., | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |
| COOLTVNETWORK.COM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-535-LPS-JLH |
| | ) |
| TRAPELO CORP., | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |

## REPORT AND RECOMMENDATION

Plaintiff CoolTVNetwork.com, Inc. ("CTN" or "Plaintiff") filed nine patent infringement

suits against Defendants Blackboard, Inc. ("Blackboard"), C.A. No. 19-291-LPS-JLH; Facebook,

Inc. ("Facebook"), C.A. No. 19-292-LPS-JLH; International Business Machines Corporation

("IBM"), C.A. No. 19-293-LPS-JLH; Kaltura, Inc. ("Kaltura"), C.A. No. 19-294-LPS-JLH;

Limelight Networks, Inc. ("Limelight"), C.A. No. 19-295-LPS-JLH; Microsoft Corporation

("Microsoft"), C.A. No. 19-296-LPS-JLH; Ooyala, Inc. ("Ooyala"), C.A. No. 19-297-LPS-JLH;

Snap Inc. ("Snap"), C.A. No. 19-534-LPS-JLH; and Trapelo Corporation ("Trapelo") C.A. No.

19-535-LPS-JLH. Each of the suits alleges infringement of CTN's U.S. Patent No. 7,162,696 ("'696 patent").

Seven of the Defendants moved to dismiss the operative[1] complaints under Federal Rule of Civil Procedure 12(b)(6), and those motions are now pending before the Court.[2] (No. 19-292, D.I. 17; No. 19-293, D.I. 25; No. 19-295, D.I. 16; No. 19-296, D.I. 13; No. 19-297, D.I. 11; No. 19-534, D.I. 15; No. 19-535, D.I. 14.) All seven motions argue that CTN failed to plausibly allege direct and indirect infringement, but the arguments vary. Two of the motions—filed by Defendants Limelight and Trapelo—also argue that the '696 patent is invalid as ineligible under 35 U.S.C. § 101.

For the reasons stated below, I recommend that the motions to dismiss filed by Limelight, Microsoft, Ooyala, and Trapelo be DENIED. I recommend that the motions to dismiss filed by Facebook, IBM, and Snap be GRANTED-IN-PART (with respect to CTN's claims of pre-suit induced infringement) and DENIED-IN-PART (with respect to CTN's other claims).

I.    BACKGROUND

The '696 patent is entitled "Method and System for Creating, Using and Modifying Multifunctional Website Hot Spots." It was issued on January 9, 2017, and claims priority to U.S. Pat. App. No. 60/210,300, filed on June 8, 2000. The claims cover an apparatus and method for

---

[1] After Limelight, Microsoft, and Snap each moved to dismiss CTN's original complaints, CTN filed first amended complaints ("FACs"). Limelight, Microsoft, and Snap then filed new motions to dismiss. Similarly, after Facebook and IBM each moved to dismiss CTN's FACs against them, CTN filed second amended complaints ("SACs"). Facebook and IBM then filed new motions to dismiss.
Facebook and IBM have withdrawn their original motions to dismiss. (No. 19-292, D.I. 15; No. 19-293, D.I. 21.) I recommend denying Limelight's, Microsoft's, and Snap's original motions to dismiss (No. 19-295, D.I. 9; No. 19-296, D.I. 8; No. 19-534, D.I. 8) as moot.

[2] Defendants Blackboard and Kaltura answered the operative complaints. (No. 19-291, D.I. 9; No. 19-294, D.I. 18.)

using hyperlinks embedded in audio and video files.[3]

According to the specification, the invention "relates generally to multifunctional website hot spots, i.e.[,] hyperlinks, and more particularly, to a program or software based tool for creating, using, modifying and/or modifying [sic] multifunctional hot spots in web applications that run over a globally accessible network[,] and a function expanding menu bar" for "creating, using, and modifying website hot spots." ('696 patent, cols. 1:29-34, 2:22-24.) The patent does not claim to have invented the use of hot spots/hyperlinks to navigate to websites or to perform functions. (*Id.*, col. 1:36-38 ("Interactive digital media and the use of hyper-linking tools to visit a designated location or perform a pre-defined function . . . are generally known in the art.").) And while the patent states that hot spots "have not been widely adapted or incorporated into video files," it doesn't claim to have invented the idea of embedding hot spots in such files either. (*Id.*, col. 1:52-53.)

What the patent does claim to have invented is a particular method and apparatus whereby "multifunctional" hot spots are embedded in audio and video files. According to the specification, the hot spots "preferably" allow the user to access "related or targeted information" to the audio/video file being played. (*Id.*, col. 2:43-48.) The hot spots are "multifunctional" because they can be programmed to perform different functions (referred to as "modes") depending either on when they are accessed during the audio/video playback or on which function a user has selected. (*Id.*, col. 3:47-50 ("The action of the hot spots could be determined by a length of time into a video, or beginning and ending time stamps within the video or software correlating to the video."), col. 3:29-31 ("Clicking an option in the menu bar determines the action to be taken when

---

[3] In this section, I attempt to describe the invention in a way that facilitates ease of understanding. In so doing, I make some generalizations about the invention. Nothing I say here should be taken as the Court's views on any current or future claim construction (or any other) issues.

a user clicks on a multifunctional hot spot.").)

The specification teaches that the hot spots can be programmed to activate a number of different modes. For example, if a user clicks on a video hot spot in "shop mode," the user can "fill a shopping cart with digital media files, the object or merchandise that was highlighted by the hot spot and other items for purchase." (*Id.,* col. 3:5, 3:12-16.) As another example, if a user clicks on a video hot spot in "link mode," the invention uses hyperlinks to direct the user to "related or targeted web pages and/or web sites in an auxiliary browser." (*Id.,* col. 3:26-28.)

The '696 patent has four independent claims. In its operative complaints, Plaintiff compares the limitations of claim 17 with Defendants' products. That claim recites:

A Multifunctional Hot Spot method comprising:

defining at least one hot spot by a communication with instructions stored on a tangible retaining medium;

accessing at least one of the hot spots from a globally accessible network;

performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot;

wherein said hot spots reside on and are accessible from a digital video or audio file;

wherein said predetermined functions are selected from a mode control;

wherein the mode control comprises a plurality of modes;

wherein the plurality of modes comprise a shop mode, a bid mode, an interact mode, an entertainment mode, and a link mode;

wherein a specific mode is selected by a user through an expandable graphical user interface bar;

wherein said specific mode further toggles based on time stamps in said digital video or digital audio file;

wherein said hot spots are visualized by outlines, shading, or illumination or a combination of each, at a predetermined area on the display;

wherein said Multifunctional Hot Spot apparatus is made to reside on and is

> executing on a computing system;

> selecting and activating at least one of said predetermined functions by clicking on each particular Multifunctional Hot Spot.

(*Id.*, cl. 17.) The other three independent claims cover "[a] Multifunctional Hot Spot apparatus" (claim 1), and "[a] tangible computer readable storage medium having computer readable program code portions stored therein, such that, when executed in a computer causes the computer to perform [certain steps listed in the limitations]" (claims 15 and 18).[4] The remaining limitations of claims 1, 15, and 18 almost exactly mirror the limitations of claim 17.

## II.    LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

---

[4] Claims 15 and 18 appear to be the same.

deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

## III. DISCUSSION

### A. Sufficiency of the Infringement Allegations

Defendants Facebook, IBM, Limelight, Microsoft, Ooyala, Snap, and Trapelo each argue that CTN has failed to plausibly allege direct infringement by Defendants or anyone else, thereby preventing CTN from moving forward on either a direct infringement or indirect infringement theory. For the most part, Defendants challenge the viability of CTN's infringement theories, not the adequacy of notice of what those theories are. For the reasons set forth below, I recommend that the Court reject Defendants' arguments.[5]

According to a recent Federal Circuit decision, a complaint sufficiently pleads direct infringement when it puts the defendant "on notice of what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)); *see also BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2018 WL 4603267, at *3 (D. Del. Sept.

---

[5] In response to some of the motions to dismiss, CTN (though its counsel) filed a number of declarations of Franz Wakefield, the named inventor of the '696 patent. The declarations contain additional documents and allegations, and they convey Mr. Wakefield's personal opinions about claim construction and infringement issues. (No. 19-293, D.I. 31, 32; No. 19-296, D.I. 17, 19; No. 19-297, D.I. 15; No. 19-535, D.I. 20.) In two cases, CTN also filed lengthy "expert" declarations that, among other things, attempt to distinguish case law cited by Defendants. (No. 19-295, D.I. 20; No. 19-535, D.I. 19.)

CTN's submission of those papers was wholly improper. The Court cannot consider additional information at this stage of the litigation. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (on a Rule 12(b)(6) motion, court may consider only the complaint, attached exhibits, matters of public record, and documents "integral to or explicitly relied upon in the complaint") (citation omitted). Moreover, the papers are filled with legal argument, which leads me to conclude that CTN is attempting to get around this Court's page limitations for briefs. I have not considered the declarations submitted by CTN in issuing this Report and Recommendation.

25, 2018).  There is no requirement that the plaintiff "plead facts establishing that each element of an asserted claim is met." *Nalco*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)).[6]

The Federal Circuit has further directed that, at this stage of the litigation, the plaintiff is "entitled to all inferences in its favor on its theory [of infringement]." *Id.* at 1349.  And district courts have been cautioned against resolving claim construction disputes at this stage.[7]  *Id.* (reversing the district court's dismissal because "Defendants' arguments boil down to objections to [Plaintiff's] proposed claim construction . . ., a dispute not suitable for resolution on a motion to dismiss").

On the other hand, it is not improper for a district court to dismiss an infringement claim when there are no relevant facts in dispute and, in the context of the case, it is clear as a matter of law that the defendant cannot infringe.  *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir.

---

[6] Before *Nalco*, it was unclear how the abrogation of Form 18 from the Federal Rules of Civil Procedure in 2015 affected the requirements for pleading direct infringement (as set forth in *Bill of Lading* in 2012).  *Nalco* restated the holding in *Bill of Lading* that element-by-element factual allegations are not required.  *Nalco*, 883 F.3d at 1350.

While the Federal Circuit purported to apply Seventh Circuit law to its review of the district court's dismissal in *Nalco*, there is no suggestion that the Seventh Circuit differs fundamentally from the Third Circuit when it comes to Rule 12(b)(6) dismissals.  Nor would one expect to find a Third Circuit case directly on point, since the Federal Circuit is the court that hears appeals in patent cases.

[7] Insofar as claim construction amounts to a pure legal determination in some cases, it is not entirely clear to me that it would always be erroneous for a court to construe claims at the motion to dismiss stage (as the broad language in *Nalco* seems to suggest).  It is also not clear to me that a patentee would be entitled to "all inferences in its favor on its theory [of infringement]," *Nalco*, 883 F.3d at 1349, if its theory of infringement turned on an incorrect construction in a case where claim construction could be accomplished solely as a matter of law.  After all, plaintiffs are entitled to have factual inferences resolved in their favor at the motion to dismiss stage, not legal conclusions.

That said, claim construction is inappropriate at the motion to dismiss stage when there is a "subsidiary" fact in dispute, namely, how a person of ordinary skill in the art would understand a term.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836 (2015) (question of how a person of skill in the art understands a term is a "subsidiary factual matter" underlying claim construction).  At the Rule 12(b)(6) stage, courts are generally required to accept the plaintiff's factual allegations as true.

2018) (affirming dismissal when the claims required a "book holder," the defendants' products were mobile cameras, and prosecution history estoppel barred a finding of infringement under the doctrine of equivalents); *Amgen Inc. v. Coherus Biosciences Inc.*, No. 17-546-LPS-CJB, 2018 WL 1517689, at *4 (D. Del. Mar. 26, 2018) (dismissing direct infringement claim when the plaintiff admitted there was no literal infringement and the undisputed facts established as a matter of law that prosecution history estoppel applied, which precluded a finding of infringement under the doctrine of equivalents), *aff'd*, 931 F.3d 1154 (Fed. Cir. 2019); *Cumberland Pharm. Inc. v. Sagent Agila LLC*, No. 12-825-LPS, 2013 WL 5913742, at *3 (D. Del. Nov. 1, 2013) (dismissing an infringement claim when the patent expressly required a formulation "free of a chelating agent," and the accused product admittedly contained a chelating agent).

To state a claim of induced infringement that can survive a motion to dismiss, the complaint must plead (1) an underlying act of direct infringement (judged by the standard above), (2) facts plausibly supporting an inference that the defendant intended another to take the acts that are alleged to constitute infringement, and (3) facts plausibly supporting an inference that the defendant knew that the induced acts constituted infringement. *Nalco*, 883 F.3d at 1355-56; *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-98-MN, 2019 WL 3069773, at *2 (D. Del. July 12, 2019).

### 1. "bid mode"

Each of the '696 patent claims requires a "bid mode." Defendants IBM, Microsoft, Ooyala, and Trapelo each contend that CTN's operative complaint fails to plausibly allege that their products meet the bid mode limitation.

CTN's SAC against IBM identifies "IBM Watson Media" as an accused instrumentality. (No. 19-293, D.I. 20 ¶ 12.) A screenshot in the SAC identifies the accused instrumentality's

"Polls" function as the feature that allegedly satisfies the bid mode limitation:



(*Id.*, ¶ 21 at 11.)  IBM argues that the term bid mode does not reasonably encompass the "Polls" feature because that feature "has nothing to do with auctions or bids."  (*Id.*, D.I. 26 at 14-15.)

CTN's FAC against Microsoft identifies its "Microsoft Mixer" product as an accused instrumentality.  (No. 19-296, D.I. 12 ¶ 12.)  Screenshots in the FAC identify the accused instrumentality's "Create Poll" function as the feature that allegedly satisfies the bid mode limitation:





(*Id.*, ¶ 21 at 10, 12.)  Microsoft argues that CTN has failed to allege additional "*facts that articulate why it is plausible*" that the "Create Poll" feature satisfies the bid mode limitation.  (*Id.*, D.I. 14 at 12 (emphasis in original).)

CTN's FAC against Ooyala identifies its "Ooyala Pulse" product as an accused instrumentality.  (No. 19-297, D.I. 10 ¶ 12.)  A screenshot in the FAC uses red color coding to identify the accused instrumentality's "vote" function as the feature that allegedly satisfies the bid mode limitation:



> wherein the plurality of modes comprise a shop mode, a bid mode, an interact mode, an entertainment mode, and a link mode;
>
> Defendant provides a plurality of modes comprising a shop mode i.e. advertisements, a bid mode i.e. voting and monetization capabilities, an interact mode i.e. chats and messaging, chiming in, an entertainment mode i.e. content viewing and delivery including videos etc., a link mode i.e. clicking an object in the video and directing the user to a specific URL.
>
> A mobile phone in Madrid. A big screen in Boston. A laptop in the Outback. Backlot delivers your video with superb quality to every screen in the world.
>
> • Built to Engage—Grab modern viewers with HD-quality video, plus interactive elements that let them click videos to vote, shop, or chime in.

(*Id.*, ¶ 21 at 11.) Ooyala argues that "'Bid mode' is plainly understood to relate to auctions," and "[t]he FAC provides no explanation as to how 'vote' is akin to any bidding or auction functionality required by the claims." (*Id.*, D.I. 12 at 11.)

CTN's FAC against Trapelo identifies its "Hapyak Interactive Video" product as an accused instrumentality. (No. 19-535, D.I. 12 ¶ 12.) Four screenshots in the FAC use green color coding to identify the features in the accused instrumentality that allegedly satisfy the bid mode limitation, all of which include "polls" and "polling" functionality:

There are other valuable Interactions (adding chapters, branching, polls, lead generation forms, and more) and as these are adopted more widely by eLearning, Marketing and eCommerce video professionals, interactive videos will become even more pervasive.

**SOURCE:** https://corp.hapyak.com/resources/how-pervasive-is-interactive-video/

Widget Library
Custom forms, gating,
polls, Like buttons and
more

**SOURCE:** https://corp.hapyak.com/platform/

4. Embed Technology – We have customers who use video to drive meetings or book demos. Integrate existing web forms and technology through iFrame annotations. This will make it more convenient for customers to book meetings and conduct other actions inside your videos. Other examples include shopping carts, calculators, polling, closed caption and more.

**SOURCE:** https://corp.hapyak.com/resources/growing-interactive-video-in-your-organization/

- **Unique Audience Feedback:** Poll your video viewers to measure brand and purchase intent with behavioral insights.

**SOURCE:** https://corp.hapyak.com/

(*Id.*, ¶ 21 at 12.)  Trapelo argues that CTN "identifies no facts making it plausible that creating or conducting a poll has anything whatsoever to do with 'conducting an auction and/or accepting bids[.]'"  (*Id.*, D.I. 15 at 13.)

CTN responds that claim construction is inappropriate at this stage, and that "bid" might later be construed to encompass the verbs "'vote', 'poll', 'like', or 'share'."  (No. 19-297, D.I. 14 at 7.)

CTN's operative complaints against IBM, Microsoft, Ooyala, and Trapelo each identify at least one accused instrumentality by name.  The operative complaints also go a step further and identify a particular feature within that instrumentality that is alleged to meet the bid mode limitation.  Under these circumstances, Defendants are "on notice of what activity . . . is being

accused of infringement." *Nalco*, 883 F.3d at 1350. That is enough at this stage of the litigation.[8] *Id.*

The cases cited by Defendants are distinguishable. For example, in *Horatio Washington Depot Technologies LLC v. TOLMAR, Inc.*, the complaint lacked any allegations connecting the accused product to a number of required limitations. No. 17-1086-LPS, 2018 WL 5669168, at *12 (D. Del. Nov. 1, 2018). Likewise, in *North Star Innovations, Inc. v. Micron Technology, Inc.*, the complaint did not identify the particular features of the accused products that allegedly met the claim limitations. No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, D.I. 37 (D. Del., Jan. 3, 2018). Indeed, the Court reasoned that the complaint in *North Star Innovations* would have been sufficient if it "identif[ied] what it is in the accused product that is said to amount to [the limitations]." *Id.* at *2. Here, unlike the cases cited by Defendants, the operative complaints identify particular features of the accused instrumentalities that are alleged to satisfy the bid mode limitation. That would have been enough before the Federal Circuit's opinion in *Nalco*, and it is certainly enough after.

Moreover, while Defendants deny that claim construction is necessary to resolve this dispute, it is clear that it cannot be resolved without construing the term "bid mode." That makes this case unlike *Cumberland Pharmaceuticals*, in which the court held that no claim construction was needed to decide that the term "free from a chelating agent" could not encompass something containing a chelating agent. *Cumberland Pharm.*, 2013 WL 5913742, at *3. Nor is the meaning

---

[8] IBM also takes issue with two other screenshots in the SAC that purport to show features meeting the bid mode element, but (according to IBM) do not correspond to IBM Watson Media, the accused instrumentality. That does not change my recommendation, for two reasons. First, as set forth above, CTN identifies at least one screenshot from the accused instrumentality setting forth the feature that allegedly meets the bid mode limitation. That is enough at this stage. Second, the SAC alleges that at least one of the other screenshots does relate to the accused instrumentality (No. 19-293, D.I. 20 ¶ 21 at 29), and that allegation must be taken as true at this stage.

of the disputed term as clear as in *Ottah*, where the court held at the motion to dismiss stage that no possible construction of "book holder" would cover a "mobile camera." *Ottah*, 884 F.3d at 1141-42.

Because the operative complaints provide sufficient notice, because claim construction is inappropriate at the motion to dismiss stage, and because CTN is entitled to all inferences in its favor on its infringement theory, dismissal is inappropriate. *See Nalco*, 883 F.3d at 1349-51 (reversing grant of motion to dismiss because the plaintiff "is entitled to all inferences in its favor on its [infringement] theory" and claim construction dispute was "not suitable for resolution on a motion to dismiss").

        2.       **"shop mode"**

Each of the '696 patent claims recites a "shop mode." Defendant Limelight contends that CTN's FAC fails to plausibly allege that its product meets that limitation.

The FAC against Limelight identifies its "Limelight Realtime Streaming" product as an accused instrumentality. (No. 19-295, D.I. 12 ¶ 12.) The FAC uses a screenshot from a Limelight Realtime Streaming demonstration video to identify the features that allegedly satisfy the shop mode limitation:



(*Id.*, ¶ 21 at 24.)  The FAC also contains a color-coded transcript of the video in which it identifies

the feature that allegedly meets the shop mode limitation.  (*Id.* ("[I]f I wanted to add a commercial

into the middle of the feed I can do something simple, like just hit a button. It would make sure that

everybody gets to see this commercial. Or if I wanted to insert an overlay advertisement into the video,

I could just click a button and it would come up on every screen.").  Limelight argues that the term

shop mode requires the ability "to click on a hotspot and add items to a shopping cart," which its

product does not do.  (*Id.*, D.I. 17 at 12-13.)  CTN responds that the FAC puts Limelight on notice

of what feature is alleged to meet the shop mode limitation.

I agree with CTN.  The FAC provides sufficient notice of what feature is alleged to

constitute the shop mode.  *See Nalco*, 883 F.3d at 1350.  Limelight disagrees with CTN's

infringement theory—and Limelight may well be right—but it will have the chance to raise that

challenge later.

### 3.    "Multifunctional Hot Spot apparatus"

Each of the '696 patent claims recites a "Multifunctional Hot Spot apparatus [that] is made

to reside on and is executing on a computing system." Defendants Facebook and Snap each contend that CTN's operative complaint fails to plausibly allege that their products meet that limitation.

CTN's SAC against Facebook identifies its "Facebook Stories Ads" and "Instagram Stories Ads" products as accused instrumentalities. (No. 19-292, D.I. 14 ¶ 12.) A screenshot from the SAC contends that the accused instrumentalities are themselves the multifunctional hot spot apparatuses, and they are alleged to reside on "Facebook's servers, and the user's smart phone":



(*Id.*, ¶ 22 at 26.) Facebook contends that the SAC refers to an iPhone as being the claimed apparatus and that Facebook does not make or sell iPhones. CTN responds that the SAC adequately alleges that the accused instrumentalities themselves are the multifunctional hot spot apparatuses and that Facebook's servers and the user's iPhone are the computing systems.

CTN's FAC against Snap identifies its "Snapchat" product as an accused instrumentality. (No. 19-534, D.I. 11 ¶ 12.) A screenshot from the SAC alleges that the limitation "wherein said Multifunctional Hot spot apparatus is made to reside on and is executing on a computing system" is met by the accused instrumentality software being stored on the user's computing device:



(*Id.*, ¶ 21 at 26.) Snap contends that the FAC refers to a computing device as being the apparatus and that Snap does not make or sell such devices. (*Id.*, D.I. 18 at 13.) CTN argues that the claim limitation should be read as a whole and that the FAC adequately alleges that "Multifunctional Hot Spot apparatus [that] is made to reside on and is executing on a computing system" is met by the accused instrumentality residing on the user's phone or computer.

I agree with CTN. While not models of clarity, the operative complaints provide sufficient

notice of CTN's theories that the disputed limitation is met by the accused instrumentalities residing on a user's computing device and/or Defendants' servers. *See Nalco*, 883 F.3d at 1350. Defendants may dispute the viability of CTN's infringement theories, but resolution of that dispute is not appropriate at this time.

> ### 4. "wherein the plurality of modes comprise a shop mode, a bid mode, an interact mode, an entertainment mode, and a link mode" and "wherein a specific mode is selected by a user . . ."

Each of the '696 patent claims recites these two limitations: "wherein the plurality of modes comprise a shop mode, a bid mode, an interact mode, an entertainment mode, and a link mode" and "wherein a specific mode is selected by a user . . ." Defendants Facebook and Snap contend that these two limitations require a user to have the option of selecting from the five claimed modes. They further contend that CTN's operative complaints fail to plausibly allege that Defendants' products permit a user to select from those five modes.

CTN counters that the claims do not require the user to have the option of selecting from all five claimed modes. While one of the limitations requires a "plurality of [five] modes," CTN argues that a different phrase, "a specific mode is selected by the user," is nevertheless satisfied if the user has the option of selecting one specific mode.[9]

The parties' dispute appears to turn on an issue of claim construction: whether (as Defendants contend) the claims require the user to be presented the option of selecting from all five claimed modes or whether (as CTN appears to contend) there have to be five modes but the user need only have the option of selecting at least one. That claim construction issue is not

---

[9] CTN also argues (apparently in the alternative) that the SAC adequately alleges that Facebook performed the disputed limitations when it tested its product. CTN does not explain this theory in any detail. Does CTN contend that Defendants' act of designing its software infringed method claim 17, *i.e.*, that the modes were "selected" by Facebook as part of its software design process? I cannot tell. As neither the SAC nor the briefing explains this alternative theory in any understandable way, I do not address it. Nor do I need to, since I recommend rejecting Facebook's argument for the reasons set forth above.

appropriately resolved at this stage. *See Nalco*, 883 F.3d at 1349 ("Defendants' arguments boil down to objections to [Plaintiff's] proposed claim construction . . ., a dispute not suitable for resolution on a motion to dismiss."). Moreover, the operative complaints sufficiently put Defendants on notice about how the "wherein a specific mode is selected by a user . . ." limitation is alleged to be met. Accordingly, I recommend rejecting Defendants' arguments.

### 5. "expandable graphical user interface bar"

Each of the '696 patent claims recites a "expandable graphical user interface bar." Defendant Trapelo contends that CTN's FAC fails to plausibly allege that its product meets that limitation.

As mentioned above, the FAC against Trapelo identifies its "Hapyak Interactive Video" as an accused instrumentality. (No. 19-535, D.I. 12 ¶ 12.) The FAC uses a screenshot and a tan box to identify the feature in the accused instrumentality that allegedly satisfies the expandable graphical user interface bar limitation:



(*Id.*, ¶ 21 at 12.) Trapelo argues that the identified portion of the screen shot is not, in fact, an expandable graphical user interface bar. (*Id.*, D.I. 15 at 14-15.) CTN responds that the tan box in

the FAC puts Trapelo on notice of what feature is alleged to meet that limitation.

I agree with CTN. The color-coded screenshot in the FAC provides sufficient notice of what CTN alleges is the expandable graphical user interface bar. *See Nalco*, 883 F.3d at 1350. Trapelo disagrees with CTN's theory, but that dispute is not appropriate for resolution in this early stage of the case.

### 6. Direct infringement by a single entity

Limelight contends that the FAC fails to allege that a single entity performs all of the steps of method claim 17. In particular, Limelight argues that the FAC fails to plausibly allege that it performs any steps that include the "interact mode" and the "shop mode." CTN counters that the FAC adequately pleads direct infringement by a single entity because it alleges (1) that Limelight tested its products, which resulted in its performance of each of the claimed steps; and (2) that a Limelight representative performed all the claimed steps in a video demonstrating the use of Limelight Realtime Streaming.

I agree with CTN. At a minimum, the FAC sufficiently pleads that a Limelight representative practiced all the steps in the demonstration video. The FAC contains numerous screenshots from the video, along with corresponding text linking the interact mode and shop mode limitations to particular portions of the video. Those allegations are enough to put Limelight on notice of how its own use of Limelight Realtime Streaming constitutes direct infringement of method claim 17. *See, e.g., DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-98-MN, 2018 WL 6629709, at *3 (D. Del. Dec. 19, 2018) (holding that direct infringement of method claim was sufficiently pled when complaint alleged that the defendants "use[d]" their own accused products).

### 7.    Induced infringement

IBM, Facebook, and Snap contend that the operative complaints fail to state a claim of induced infringement.  Their first argument is that there can be no induced infringement without direct infringement.  I have already rejected Defendants' arguments relating to direct infringement, so I also reject this argument.

IBM, Facebook, and Snap also argue that the operative complaints fail to allege that they had pre-suit knowledge of the '696 patents, which is required to show induced infringement as to their activities prior to service of the complaints.[10]  CTN does not disagree with IBM's argument, and CTN explicitly agrees with Snap.  Accordingly, I agree with IBM and Snap that CTN has failed to adequately plead induced infringement as to IBM's and Snap's activities prior to service of the respective complaints.  *See Evolved Wireless*, 2016 WL 1019667, at *6.

As for Facebook, the SAC alleges that CTN's President sent Facebook's Chief Technology Officer a text message in November 2016 "describing the '696 patent and providing a link to a youtube video advertisement for one of Plaintiff CoolTVNetwork.com, Inc.'s products (https://www.youtube.com/watch?v=ApPQ-k8Yu4) which at 1 minute 16 seconds in the video depicts [a screenshot of] U.S. Patent No. 7,162,696."  (No. 19-292, D.I. 14 ¶ 20.)  The SAC further alleges that Mr. Wakefield emailed the "Director for Facebook at Work" in November 2016 and suggested that CTN's "technology . . . would be a great addition to Facebook's products as it would enable clickable video that can be used as a monetization tool, to launch Facebook at Work from

---

[10] The operative complaints in this case only contain one count: "Patent Infringement."  There is no separate count of "induced infringement" or "pre-suit induced infringement."  Nevertheless, judges in this district (and others) have entertained motions to dismiss "claims" of pre-suit induced infringement.  *See, e.g., DoDots*, 2019 WL 3069773, at *4-5; *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 15-545-SLR-SRF, 2016 WL 1019667, at *6 (D. Del. Mar. 15, 2016), *report and recommendation adopted*, 2016 WL 1381765 (D. Del. Apr. 6, 2016).  CTN does not argue that this issue is inappropriately raised on a motion to dismiss, so I will address it.

live and/or prerecorded videos, and/or to add a spontaneous call-to-action for viewers. Franz then provided a link to the CoolTVNetwork.com, Inc. video mentioned above and further mentioned that he would be interested in discussing a licensing deal for use of [CTN's] ClickVideoShop technology by Facebook." (*Id.*)

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Under the particular (and peculiar) circumstances here, I agree with Facebook that the allegations in the SAC are insufficient to allege induced infringement relating to the time period before CTN filed suit in 2019. Even assuming that the allegations are true, and that Facebook received notice of the existence of the '696 patent in 2016, the SAC does not plead that anyone at CTN conveyed to anyone at Facebook an allegation of infringement of the '696 patent in connection with the accused instrumentalities, Facebook Stories Ads or Instagram Stories Ads. *See, e.g., Evolved Wireless*, 2016 WL 1019667, at \*3-4, 6 (dismissing pre-suit induced infringement claim notwithstanding the defendant's receipt of a notice of the existence of the patent, when the complaint did not allege that the defendant had received a pre-suit allegation of infringement); *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 6044793, at \*15 (D. Del. Nov. 13, 2012) (complaint lacked allegations supporting an inference that "[defendant] had pre-suit knowledge that its users' actions constituted infringement," even though the complaint alleged that the defendant was notified about the existence of the patent), *report and recommendation adopted*, 2013 WL 2295344 (D. Del. May 24, 2013). Indeed, CTN admits that Facebook "wasn't making or selling the Accused Instrumentalit[ies] at the time that [] Franz Wakefield disclosed the '696 patent to Facebook's CTO and another Facebook representative" in November 2016. (No. 19-292, D.I. 20 at 18.) Nor does the SAC plead any other facts permitting

a plausible inference that Facebook had pre-suit knowledge that others' use of its later-released Facebook Stories Ads and Instagram Stories Ads constituted infringement of the '696 patent. Accordingly, I agree with Facebook that the SAC fails to plausibly allege induced infringement as to Facebook's activities prior to service of the complaint.[11]

### B.  Patent Eligibility under 35 U.S.C. § 101

Limelight and Trapelo contend that the asserted claims of the '696 patent are invalid under 35 U.S.C. § 101.  Section 101 defines the categories of subject matter that are patent eligible.  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  The statutory language is broad, but the Supreme Court has recognized three exceptions to the categories of subject matter eligible for patenting: "laws of nature, natural phenomena, and abstract ideas."  *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).  "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Alice Corporation Party Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the

---

[11] To be clear, I am not suggesting that a plaintiff must always plead that it conveyed a pre-suit allegation of infringement to the defendant.  In some circumstances, a defendant's knowledge that others' acts constituted infringement might plausibly be inferred from the defendant's knowledge of the existence of the patent, for example, in cases where the field of the particular invention is alleged to be small or the parties are direct competitors.  *See, e.g., Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379-80 (Fed. Cir. 2017) (reversing dismissal of pre-suit induced infringement claim when complaint alleged that the defendant hired two of the plaintiff's former employees who "had knowledge of the [] patent and its scope"); *BioMérieux*, 2018 WL 4603267, at *5 (declining to dismiss induced infringement claim where complaint alleged that "the parties compete[d] within a small industry and [] the invention has achieved some notoriety" and that the defendant engaged in a pre-suit "campaign" to revoke the European counterparts to the patents-in-suit).  But no such circumstances are present or alleged here.

Supreme Court established a two-step test for determining whether patent claims are invalid under 35 U.S.C. § 101. In step one, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. This first step requires the court to examine "focus" of the claims, *i.e.*, their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal marks and citation omitted).

In conducting step one, "while the specification may help illuminate the true focus of a claim, . . . reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). Moreover, because "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012), "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 ("[D]escribing the claims at [too] high [a] level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016). If the answer to the *Alice* step one inquiry is that the patent claims are not directed to a patent-ineligible concept, the claims are not ineligible under § 101 and the analysis is over.

If the claims are directed to a patent-ineligible concept, the court must proceed to step two, where it "consider[s] the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—*i.e.*, an element or combination of elements that is

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (internal quotations and citations omitted).

At step two, "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). Thus, "[m]erely reciting the use of a generic computer or adding the words 'apply it with a computer'" does not transform a patent-ineligible concept into patent eligible subject matter. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 223). Nor is there an inventive concept when the claims "[s]imply append[] conventional steps, specified at a high level of generality" to a patent ineligible concept. *Alice*, 573 U.S. at 222.

Conversely, claims pass muster at step two when the claim elements "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (citation and internal marks omitted). But "[t]he mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional." *Id.* at 1369. Moreover, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2019). Whether an activity is well-understood, routine and conventional to a skilled artisan is a question of fact. *Berkheimer*, 881 F.3d at 1368.

"At both steps one and two, it is often useful to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 443 (D. Del. 2018).

At step one, Limelight argues that claim 17 is directed to the abstract idea of "directing a

person to additional content or activities that the person may find relevant based on the content he or she has chosen." (No. 19-295, D.I. 17 at 14.) Trapelo argues at step one that claim 17 is directed to the abstract idea of "performing a predefined function based on a selection." (No. 19-535, D.I. 15 at 15.) CTN responds that claim 17 is not directed to an abstract idea; rather, it is "directed to an improved user interface for computing devices through multifold, time-stamped, user selectable, multifunctional video/audio hotspots in networked environments." (No. 19-535, D.I. 15 at 11.)

As an initial matter, Limelight and Trapelo have done what the Federal Circuit has cautioned against: their descriptions of the focus of the claim 17 are at too high a level of abstraction and "untethered from the language of the claim[.]" *Enfish*, 822 F.3d at 1327. Claim 17 requires user interaction with an allegedly new type of multifunctional hotspot (hyperlink), where the hotspots activate performance of different functions depending on the user's pre-selected preference ("wherein a specific mode is selected by a user through an expandable graphical user interface bar") and/or when they are accessed during audio/video playback ("wherein said specific mode further toggles based on time stamps in said digital video or digital audio file"). Moreover, while the specification does not appear to contend that the invention has solved any particular "problem" in the art, the description of the invention suggests that the claims disclose an improved interface for interacting with audio and video files. ('696 patent, col. 2:18-24 ("The foregoing prior art fails to disclose hyperlink and hot spot technology that is flexible, adaptable for use in digital media files, such as audio and video, platform independent, multi-tasked, and changeable and adaptable in functionality. The prior art also fails to disclose a menu bar that communicates with hot spots for creating, using and modifying website hot spots.").) *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018)

(claim covering a "particular manner of summarizing and presenting information in electronic devices" was not directed to an abstract idea).

Thus, at this point in the case, I am not persuaded that claim 17 is directed to an abstract idea. *See Mod Stack LLC v. Aculab, Inc.*, No. 18-332-CFC, 2019 WL 3532185, at *4 (D. Del. Aug. 2, 2019) (denying § 101 motion to dismissed when the defendant's articulation of the abstract idea was oversimplified); *3G Licensing, S.A. v. HTC Corp.*, No. 17-83-LPS, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) ("While it may be possible that claim 1 could be accurately characterized as directed to some abstract idea, all I need to decide today [at the motion to dismiss stage] is that the claim is not directed to the abstract idea articulated by defendant."); *Groove Dig., Inc. v. Jam City, Inc.*, No. 18-1331-RGA, 2019 WL 351254, at *3 (D. Del. Jan. 29, 2019) (denying motion to dismiss under § 101 without prejudice to renew at summary judgment when the defendant's proposed abstract idea "does not satisfactorily capture the substance of the claims"). But I cannot say for sure at this stage that claim 17 is not directed to some other abstract idea yet to be articulated.[12] Accordingly, I recommend that Limelight's and Trapelo's motions be denied

---

[12] Because there is no "definitive rule to determine what constitutes an 'abstract idea,'" step one is often conducted by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334 (citing *Alice*, 573 U.S. at 221). One principle that has emerged from a line of § 101 cases draws a distinction between "claims that are directed to a specific improvement in the capabilities of computer devices," which are patent eligible, "or, instead, 'a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Core Wireless*, 880 F.3d at 1361-62 (citing *Enfish*, 822 F.3d at 1336); *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008-11 (Fed. Cir. 2018) (affirming § 101 patentability of a method for navigating a new spreadsheet interface); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) (affirming patentability under § 101 because "the claims at issue . . . specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink"); *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 737-38 (D. Del. 2018) (compiling cases).

Another principle that has emerged from § 101 cases draws a distinction between claims that "focus on a specific means or method," which may be patentable, and claims that "are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes

without prejudice to raise the § 101 issue at the summary judgment stage.

## IV.  CONCLUSION

For the reasons set forth above, I recommend that the motions to dismiss filed by Limelight (C.A. No. 19-295, D.I. 16), Microsoft (C.A. No. 19-296, D.I. 13), Ooyala (C.A. No. 19-297, D.I. 11), and Trapelo (C.A. No. 19-535, D.I. 14) be DENIED.  I recommend that the motions to dismiss filed by Facebook (C.A. No. 19-292, D.I. 17), IBM (C.A. No. 19-293, D.I. 25), and Snap (C.A. No. 19-534, D.I. 15) be GRANTED-IN-PART (with respect to CTN's claims of pre-suit induced infringement) and DENIED-IN-PART (with respect to CTN's other claims).

I also recommend that Limelight's, Microsoft's, and Snap's pending motions to dismiss prior versions of CTN's complaints (C.A. No. 19-295, D.I. 9; C.A. No. 19-296, D.I. 8; C.A. No. 19-534, D.I. 8) be DENIED as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to

---

and machinery." *Two-Way Media*, 874 F.3d at 1337; *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (claim was directed to an abstract idea when the claims did not cover "a particular way of programming or designing the software to create menus that have the[ claimed] features, but instead merely claim the resulting systems"); *Affinity Labs of Tex. LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (claim was directed to an abstract idea when the limitations were "entirely functional in nature"); *see also Epic IP*, 351 F. Supp. 3d at 739-40 (compiling cases).

Unsurprisingly, the parties rely on different lines of cases to support their positions.  CTN argues that, under *Core Wireless* and the rest of the first line of cases, it has claimed a "specific improvement in the capabilities of computer devices," namely, an improved computer interface. Limelight and Trapelo rely on the second line of cases, and they contend that claim 17 includes mere generic components claimed using functional language.  Claim 17 has similarities to and differences from aspects of both lines of cases, but it does not fall clearly into one or the other.  As I recommend denying Limelight's and Trapelo's motions without prejudice to renew for the reasons set forth above, Defendants will have the chance to reformulate their articulations of the alleged abstract idea and re-attempt to persuade the Court that claim 17 is governed by the second line of cases.

ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated:     September 16, 2019

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE